IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERNEST SMALIS,                          :
             Plaintiff,        :
          v.                    :   Case No.   3:03-cv-268-KRG-KAP
DR. ADAM EDELMAN, DR. LANSKY,    :
and PRISON HEALTH SERVICE, INC.,:
           Defendants        :

<u>Report and Recommendation</u>

<u>Recommendation</u>

The remaining defendants, Adam Edelman, M.D., Martin Lasky, M.D., (misnamed as Lansky in the complaint) and Prison Health Services, Inc., move for summary judgment, docket no. 62, as does plaintiff, docket no. 59.  The  defendants' motion for summary judgment should be granted and the plaintiff's denied.

<u>Report</u>

First, plaintiff's motion for extension of time to respond to the remaining defendants' motion for summary judgment and to compel discovery, docket no.  67, is denied.  Plaintiff is an inmate at S.C.I. Mercer who filed a complaint when he was incarcerated at S.C.I. Camp Hill because he was dissatisfied with the Pennsylvania Department of Corrections' plan for treating his prostate cancer.  The motion to extend time and motion to compel discovery relate to requests by plaintiff for documents relevant to examination and treatment recommendations by a Doctor Daloni who examined plaintiff at S.C.I. Mercer in 2006 and 2007.  Not only is the motion untimely because my case management order, docket no. 56, directed discovery to be completed by December 2006, but the

discovery sought is on its face not relevant to the claim of deliberate indifference which allegedly took place in 2003 and 2004.

To summarize the Amended Complaint, plaintiff was found to have prostate cancer in April 2003 while at S.C.I. Camp Hill for classification after being sentenced in the Allegheny County Court of Common Pleas. Doctor Lasky was the head of the medical department there. Doctor Prudencio, a consultant who examined plaintiff in June 2003, biopsied plaintiff in July 2003, and ordered a bone scan for plaintiff in September 2003, examined plaintiff in August 2003 and explained that either radiation treatment or surgical intervention would be appropriate. A Doctor Millito, another consultant who examined plaintiff in December 2003, told plaintiff that he was an excellent candidate for surgical treatment. Plaintiff desired to have surgery. Lasky allegedly told plaintiff the type of surgery he wanted was not standard procedure, and apparently approved only radiation therapy, which plaintiff refused.

Plaintiff was designated to S.C.I. Houtzdale in February 2004, and notified the prison medical department there of his cancer and his desire for surgery. Norene Greenleaf, the medical administrator there, sent him to Jack Schocker, M.D., a consultant who examined plaintiff in March 2004. Schocker likewise recommended surgical intervention, described as a radical

prostatectomy with nerve sparing technique.  The medical director at Houtzdale, a Doctor Hellander, allegedly agreed with Schocker's recommendation.  Although the amended complaint does not say so, from the exhibits attached by plaintiff it appears that defendant Edelman, the state director for Prison Health Services, was then involved in reviewing the matter, and that sometime after April 2004, Edelman denied surgical intervention instead of radiation on the basis of a report (not in the record) by a Doctor Schaff.  In August 2004, Edelman apparently reviewed plaintiff's medical records and also denied plaintiff's request for another bone scan. Plaintiff attempted through counsel to have the Pennsylvania Department of Corrections allow him to have surgery at his own expense, but the department denied this for the reason that it was inadvisable to allow the perception that some inmates could obtain medical care based on their access to financial means.

          The plaintiff's motion for summary judgment, docket no. 59, must be denied.  Plaintiff cites, as he has throughout this litigation, the March 2003 report of Doctor Schocker which recommends surgical intervention.  Plaintiff also alleges that defendant Prison Health Services denied him a transfer to S.C.I. Mercer to receive surgery from Doctor Daloni.  Plaintiff concludes that he is entitled to summary judgment because any course of treatment other than a prostatectomy constitutes deliberate indifference.

3

The law is clear that a layman is not competent to give a medical opinion. Plaintiff therefore offers no evidence whatsoever in support of his claims unless the report of Doctor Schocker, docket no. 11, Amended Complaint, Exhibit E-2, can be considered to be an expert report. I need not explore the question whether any medical record favorable to a claim can be transformed into evidence in a form that would admissible at trial, see Fed.R.Civ.P. 56(e), because even assuming that Doctor Schocker would come into court and testify in accordance with his report, that report notes that there are "a number of treatment options." Although Doctor Schocker recommends surgery he by no means rules out radiation because the last sentence of his report is: "If he [that is plaintiff] decides to have radiation therapy treatment, arrangements will be made for him to be seen here again." Plaintiff cannot obtain summary judgment when his own strongest piece of evidence (assuming it could substitute for a medical expert report) is silent about the necessity of the medical treatment he claims defendants should have provided him.

The defendants' motion for summary judgment, docket no. 63, must be granted as to defendant Prison Health Services because liability for civil rights violations cannot be based on the principle of respondeat superior. See Monell v. Department of Social Services, 436 U.S. 658, 690-95 (1978)(authorizing liability when a municipality's "custom or policy" has caused the violation

4

of federal rights).  Plaintiff offers no evidence that Prison Health Services had any policy for treatment of prostate cancer, no evidence that such a hypothetical policy (presumably of preferring radiation to surgical treatment) was adopted with deliberate indifference to inmates' serious medical needs in prostate cancer cases, and no evidence that defendant Edelman and Lasky's treatment decisions were caused by any such policy.

Summary judgment should be granted to Doctors Lasky and Edelman as well.  Because neither is involved in plaintiff's care nor has been for several years, any claim for injunctive relief is moot.  As can be seen from plaintiff's most recent motion to compel, his medical treatment is ongoing while he is incarcerated and may even result in another doctor recommending surgical intervention, which is what plaintiff obviously wants.  A complaint under Estelle v. Gamble, 429 U.S. 97 (1976), however, is not a vehicle for the court to take over the management of prison health care decisions.  Equitable relief is available in the appropriate case, namely where it is clear that no medical care is being provided or no professional judgment has informed the decision to provide medical care.  See e.g. Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326 (3d Cir.1987).  The Prison Litigation Reform Act, however, requires an inmate to bring his treatment complaints to the attention of several levels of prison management before filing suit, and this results in the

typical <u>Estelle v. Gamble</u> complaint filed in the last decade necessarily looking back to a point prior to the filing of the complaint and asking whether the treatment decision as made was deliberately indifferent to an inmate's serious medical needs. This is the typical <u>Estelle v. Gamble</u> complaint, and the issue framed by the plaintiff's Amended Complaint is whether these defendants were deliberately indifferent to plaintiff's serious medical needs when they made their treatment decisions in 2003 and 2004 to approve radiation and deny surgery. The standard for summary judgment is prescribed by Fed.R.Civ.P. 56: if the record (pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any) shows that there is no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law. <u>Woodside v. School Dist. of Philadelphia Bd. of Educ.</u>, 248 F.3d 129, 130 (3d Cir. 2001) (internal quotations and citations omitted). The court must construe the facts in the light most favorable to the non-moving party. <u>Doe v. Centre County</u>, 242 F.3d 437, 446 (3d Cir. 2001). However, since to establish liability plaintiff bears the burden of proving the deliberate indifference of each defendant, the defendants may present a <u>prima facie</u> case for summary judgment by "pointing out to the District Court [] that there is an absence of evidence to support the non-moving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Because defendants have done so, the plaintiff is

required to "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986): he must produce evidence sufficient to show that a reasonable factfinder might, following the applicable substantive law, return a verdict for him.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

The element of deliberate indifference which plaintiff must show to prevail at trial requires proof of knowing and willful disregard by defendants:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

The key issue here is obviously excessive risk, that is whether a decision to proceed with radiation instead of surgery is (or more properly was) so much riskier to plaintiff's health that a reasonable jury could find defendants liable for choosing that option.   But the record is void of any evidence on that topic: plaintiff is not competent to express an opinion, and Doctor Shocker does not.   In <u>Estelle v. Gamble</u>, prison medical personnel never took an x-ray or used any other diagnostic technique or treatment to determine whether the inmate's pain after a 600 pound

bale of cotton fell on him might be the result of a broken back. The Supreme Court held this was not deliberate indifference:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]

429 U.S. at 107.  If decisions as to the "forms of treatment" are classic examples for medical judgment, it would take the most unequivocal expert evidence to prove deliberate indifference where a medical doctor chose one of several available treatment options. When the defendants have chosen an admittedly standard treatment and there is no competent evidence of its inefficacy relative to the alternative preferred by the plaintiff, plaintiff does not present a genuine issue of fact that the defendants were negligent, much less deliberately indifferent.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: _12 September 2007_        _Keith A. Pesto,_
                                         Keith A. Pesto,
                                         United States Magistrate Judge

Notice by ECF to counsel of record and by U.S. Mail to:

Ernest Smalis FH-5830
S.C.I. Mercer
801 Butler Pike
Mercer, PA 16137